```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JAMES P. COTTER,              :    CIVIL ACTION
     and EILEEN McKEE         :
                              :
               Plaintiffs,    :    NO. 05-5953
                              :
          v.                  :
                              :
THE BOEING COMPANY,           :
                              :
               Defendant.     :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              June 25, 2007

        Plaintiff Eileen McKee worked for The Boeing Company (Boeing) for nearly 34 years when, on February 22, 2002, she was informed that she was being laid off.  At the time she was laid off, Ms. McKee was 52 years old.

        After exhausting her administrative remedies by pursuing complaints with the EEOC and the PCRA, Ms. McKee[1] filed this age discrimination action against Boeing on November 14, 2005, pursuant to the Age Discrimination and Employment Act (ADEA), 29 U.S.C. § 621, et seq, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, et seq.  She alleges that she was laid off, while similarly situated younger employees with less experience were retained by Boeing.  Plaintiff contends that her employment was terminated, in part, because of her age.  She

---

[1] The case settled as to Plaintiff James P. Cotter on February 14, 2007.

seeks the following relief: (1) a declaration that defendant violated the ADEA and the PHRA; (2) an order reinstating her; (3) compensatory damages; (4) liquidated damages; and (5) attorneys' costs and fees.

Before the Court is Boeing's motion for summary judgment.  Because a reasonable jury could find that Boeing's proffered legitimate nondiscriminatory reason was a pretext for age discrimination, Boeing's motion for summary judgment will be denied.

I.   BACKGROUND

Eileen McKee began working for Defendant in April 1968.  Throughout her tenure at Boeing, she held a number of positions at the company.  By 2002, however, she was one of two employees working in the Shared Services department with the job title Human Resources Specialist 2.[2]  In this capacity, it was Ms. McKee's responsibility to maintain the employee files and databases, to file incoming human resource documents, to locate those documents when needed and to ensure proper coding and adjustments to employee records.  The other employee sharing the

---

[2] It is not clear exactly how long Ms. McKee was in the Shared Services group.  It appears that, although her official job titled was with the Human Resources department before 2002, she had been performing the same tasks and reporting to the same manager, Mr. Chevalier, for several years before she was "officially" assigned to the Shared Services group.

title of Human Resource Specialist 2, Deborah Kimball, was responsible for the office's multi-billion dollar tuition reimbursement program, Learning Together.

Sometime in 1997 or 1998, Boeing decided to transition from paper personnel files to a centralized computerized personnel database, which would be controlled in its St. Louis, Missouri, office. Ms. McKee aided the transition by scanning documents into computer format. By 2001, the transition was complete, leaving Ms. McKee, who formally spent a large portion of her time maintaining the paper personnel files, with much of her responsibilities eliminated. The transition, however, did not reduce Ms. Kimball's workload.

Around the same time, Boeing's general business environment took a downturn, and it was forced to lay-off hundreds of employees at its Ridley Park, Pennsylvania, facility through a Redeployment Selection Process (RSP).[3] According to Boeing, over 700 of its Ridley Park employees across all company segments, both hourly and salary, were terminated in 2001 and 2002. Mr. Richard Chevalier, Ms. McKee's direct superior from 1999 to 2002, engaged in a RSP of the Shared Services group. Under the predetermined RSP guidelines, issued by the Human Resources Department, this meant undertaking a direct comparison

---

[3] Boeing also refers to its lay-offs as a reduction in force (RIF).

of Ms. McKee and Ms. Kimball.  Mr. Chevalier evaluated both the women, using a scale of 1 through 5 (with 5 being the best score) on the following criteria: problem solving, multi-tasking, adaptability/flexibility, quality, initiative, customer satisfaction, self-confidence, communication, and process management.  Ms. McKee received a score of 17, while Ms. Kimball earned a score of 39.

As a result of these scores, on February 15, 2002, Ms. McKee was informed that she was being laid off, effective on April 19, 2002.  Ms. Kimball, who was 36 years old at the time and had 16 years of experience at Boeing, was spared; she was not laid off.  The decision to terminate Ms. McKee was reviewed by Mr. Chevalier's direct manager, and, pursuant to the RSP Guidelines, by a Special Category Review Board.  Mr. Chevalier was able to find Ms. McKee temporary work at Boeing, however, which twice extended her employ until she left on September 13, 2002.

Believing that her termination was motivated, at least in part, by her age, on July 25, 2002, Ms. McKee filed a complaint of age discrimination with the Pennsylvania Human Rights Commission (PHRC) and with the Equal Employment Opportunity Commission (EEOC).  On July 18, 2005, the PHRC determined that McKee was not entitled to relief and dismissed her claim.

McKee then filed the current action alleging age discrimination in violation of the ADEA and PHRA in November 2005.  Boeing now moves for summary judgment.  It claims that Plaintiff cannot survive its summary judgment motion because she has put forth insufficient evidence from which a reasonable fact finder could either disbelieve Boeing's reason for terminating Ms. McKee, as part of its RSP, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the Ms. McKee's layoff.  The Court disagrees with Boeing.

II.  DISCUSSION[4]

    A.  McDonnell Douglas Burden Shifting Analysis

Age discrimination claims are governed by the familiar

---

[4] A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis.[5] Tomasso v. Boeing Co., 445 F.3d 702, 704 (3d Cir. 2006). Under McDonnell Douglas, the plaintiff must first "produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). In order to make out a prima facie case of discrimination, a plaintiff must show (1) that she was a member of a protected class -- here, 40 years of age or older; (2) that she was terminated, (3) from a job for which she was qualified; and, in the context of a reduction in force (4) the employer retained a similarly situated employee who was "sufficiently younger" than the plaintiff. Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231, 234-235 (3d Cir. 1999) (explaining fourth element of prima facie case of age discrimination in the reduction in force context).

If the plaintiff establishes a prima facie case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate,

---

[5] There is no allegation here that Plaintiff has direct evidence of discrimination. Cf. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.").

nondiscriminatory reason for the discharge." Keller, 130 F.3d at 1108 (citing St. Mary's, 509 U.S. at 506-07).  "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'"  Tomasso, 445 F.3d at 706 (citing Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)).

Once the defendant proffers a legitimate, nondiscriminatory reason for the discharge, the plaintiff may then survive summary judgment by citing evidence that the rationale offered by the defendant is merely a pretext for discrimination.  Id.  She may do this by "submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The plaintiff will not survive the defendant's motion for summary judgement by showing that the defendant was "wrong" in laying her off; rather she must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Id. (citing Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005)).  This means that the plaintiff must "demonstrate such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. (internal citations omitted) (citing Fuentes, 32 F.3d at 765).

Although the McDonnell Douglas framework is applied in the reduction in force context, it is important to note that "a decision to lay off an employee in a RIF differs from a decision to fire an employee during ordinary circumstances." Id. at 707. "In ordinary times, employees are fired for poor performance; in a RIF, even qualified employees are laid off in order to reduce personnel." Id. However, low scores on reduction in force evaluations may be a evidence of a pretext for discrimination, especially where an employer uses subjective criteria in the evaluation. Tomasso, 445 F.3d at 706.

B. Application

Defendant does not contest that Plaintiff has met the initial phase of the McDonnell Douglas burden shifting analysis as Ms. McKee has put forth a prima facie case of discrimination. Plaintiff is a member of a protected class (40 years of age or older); (2) was terminated, (3) from a position for which she was qualified; and (4) one or more similarly situated, sufficiently

-8-

younger employee was retained, namely Ms. Kimball.[6]  Nor has Plaintiff contested that Boeing's economic need for layoffs represents a legitimate, nondiscriminatory reason for her termination.

The real issue plays out in the third phase of the burden shifting analysis -- whether Plaintiff has succeeded in bringing forth sufficient evidence from which a reasonable fact finder could conclude that Boeing's proffered reason for terminating McKee was merely a pretext for discrimination.  The Court concludes that, by pointing to two facts in particular, when read together, McKee has presented sufficient evidence from which a reasonable fact finder could conclude that Boeing's proffered reason for terminating McKee was merely a pretext for discrimination.[7]

---

[6] At the time McKee was laid off, she was 52 and Kimball was 36 years old.  This sixteen year age difference is sufficient to satisfy the fourth element of a prima facie case.  See Showalter, 190 F.3d at 236.

[7] McKee also points to a third fact -- that Boeing failed to comply with its own RSP guidelines.  The Court, however, is not persuaded by this argument.  First, the argument that Ms. McKee was "dissimilar" to Kimball and therefore should not have been compared to her during the RIF, fails.  Plaintiff believes that she is "similarly situated" to Ms. Kimball for purposes of the fourth element of the prima facie case.  Therefore, by arguing that she is both "similarly situated" and "dissimilar," Plaintiff's argument has an inherent contradiction.  In addition, Ms. McKee and Ms. Kimball were similar employees under the provisions of the RSP Guidelines.  They were both in the same group (Shared Services), maintained the same job title (Human Resources Specialist 2), the same occupational code (FADV), and reported to the same direct supervisor (Chevalier).  Plaintiff

One, there is a stark inconsistency between Ms. McKee's yearly performance evaluation and the scores on her RSP evaluation, both of which were completed by the same person, Chevalier.  And two, the highly subjective nature of the RSP criterion, in conjunction with the fact that Chevalier removed the only criterion on which McKee scored favorably, is sufficient evidence from which a reasonable factfinder could deem Boeing's proffered nondiscriminatory reason unworthy of credence.

>   1.  Chevalier's RSP evaluation of Plaintiff is inconsistent with the comments he made on her annual review.

Ms. McKee points to the fact that Mr. Chevalier, her direct superior, not only conducted her RSP evaluation, but also conducted her semi-annual and annual performance evaluations. She has submitted her performance evaluations on which Mr. Chevalier rated McKee's performance favorably, stating Plaintiff

---

points to no other employee that was "more similar" to Plaintiff.

    Second, although McKee makes much of the fact that
efforts to place her in other departments following the decision
to lay her off were not document by the reviewing managers in
other departments, the Court fails to see how this could be
evidence of discrimination.  Plaintiff has failed to show that
these outside reviewing managers even knew her.  Thus, this
argument cannot be construed by a reasonable factfinder as
evidence that Boeing's proffered reason was a pretext for
discrimination.

was "doing a great job."  Plf's Ex. in Opp. to Def's Mot. for Summ. Jgmt., doc. no. 16.  She believes that the fact that he then gave her considerably poorer marks on her RSP evaluation is an inconsistency that shows Boeing's intent to discriminate.

Plaintiff concedes that Chevalier, despite giving her positive semi-annual and annual performance evaluations, had problems with the way McKee performed some of her daily tasks.  In particular, Chevalier was troubled by the "atrocious" state of the file room, for which McKee was responsible.  McKee dep. 70:5-12.  McKee acknowledges that Chevalier "was on [her] case every day about doing the filing" and he would become "irate" about the fact that she was not up on the filings, sending her emails or coming to her office door to inform McKee that he was "really upset" that she was not getting the filing done.  McKee dep. 70:3-71:11.  Although Chevalier's deposition seems to indicate that this was a major problem, Chevalier did not relay this alleged discontentment in any of the performance evaluations he completed for McKee.  Only when Chevalier evaluated McKee in the reduction in force context did his gripes about McKee's performance in filing translate into a poor evaluation.  The starkly contrasting accounts of the same employee told by the same evaluator pre-RSP versus during RSP is an inconsistency that could lead a reasonable factfinder to deem Boeing's proffered reason 'unworthy of credence.'"  Fuentes, 32 F.3d at 765.

Tomasso supports the Court's conclusion.  There, much like Ms. McKee, the plaintiff sued Boeing for age discrimination after being laid off in a 2001 reduction in force.  445 F.3d 704-05.  Boeing's primary explanation for why the plaintiff received a low score on his RSP evaluation, and was consequently chosen for layoff, was due to his lack of interest in Process Validation Assessments (PVAs), a type of inspection that Boeing used to monitor its subcontractors.  Id. at 707.  The Third Circuit found that the plaintiff and the manager that evaluated the plaintiff told "radically different stories about [the plaintiff's] interest in PVAs."  Id. at 708.  Because of this, the court concluded that a fact finder could decide to credit the plaintiff's version of the facts and summary judgment in favor of Boeing was not appropriate.

In this case the "radically different stories" were told by the same person; i.e., Chevalier, the decision-maker.  Because Chevalier's pre-RIF and post-RIF evaluations are strikingly inconsistent, a reasonable fact finder could find "such weaknesses implausibilities, inconsistencies, incoherencies, or contradictions, in Boeing's explanation as to deem it "unworthy of credence."  Fuentes, 32 F.3d at 765.

2. The removal of a component of the evaluation on which Plaintiff scored highly is evidence that the

RIF was a pretext for discrimination.

Two evaluations had actually been conducted of Ms. McKee and Ms. Kimball during the RSP. The first contained an additional category, HR systems knowledge, that Mr. Chevalier removed when conducting the second RSP evaluation of the two candidates. This category was the only one in which Ms. McKee scored a 5 -- a perfect score, and on which Ms. Kimball scored a 1. According to McKee, Chevalier's removal of this criterion is evidence of Boeing's discriminatory intent.

The Court agrees that a reasonable fact finder could construe this fact as evidence of Boeing's alleged discriminatory intent. First, low scores in a subjective category can be evidence of pretext for discrimination. All criteria on which McKee was evaluated were highly subjective and are capable of being applied more rigorously to one employee than to another nefariously. Second, before submitting his final RSP decision to the Special Category Review Board, Chevalier removed the single criterion in which McKee received a positive score, HR Systems. Although removing the category in which McKee had done the best did not ultimately affect the order in which the two candidates scored in the evaluation (Kimball first and McKee second), this change in criteria, in the absence of a reasonable explanation, may raise an adverse inference that the change was initiated to adversely handicap McKee's final score.

Boeing offered several reasons to explain Mr. Chevalier's decision to remove the criterion, such as the fact that the HR Systems criterion was no longer appropriate because the systems it referred to were outdated. It is up for a jury to decide whether to draw any adverse inference or to accept the explanations proffered by Defendant as to why the criteria were modified. The highly subjective nature of the criteria used, together with the fact that the evaluation was tinkered with, to McKee's detriment, cast sufficient doubt on Boeing's proffered reason.

III. CONCLUSION

Although Boeing has provided a sufficient age-neutral rationale to explain Ms. McKee's layoff, Plaintiff has succeeded in offering evidence from which a reasonable fact finder could conclude that this rationale is "unworthy of credence." At bottom, Plaintiff cast sufficient doubt on Boeing's proffered reason for laying off Plaintiff. Therefore, Boeing is not entitled to judgment as a matter of law.

An appropriate Order follows.

```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JAMES P. COTTER,                 :      CIVIL ACTION
     and EILEEN McKEE            :
                                 :
               Plaintiffs,       :      NO. 05-5953
                                 :
          v.                     :
                                 :
THE BOEING COMPANY,              :
                                 :
               Defendant.        :
```

**O R D E R**

AND NOW, this **25th** day of **June, 2007,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Defendant The Boeing Company's Motion for Summary Judgment with Respect to the Claims by Eileen McKee (doc. no. 13) is **DENIED**.

   **AND IT IS SO ORDERED.**
                                     S/Eduardo C. Robreno
                                    **EDUARDO C. ROBRENO, J.**

-15-